IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Landrecus Cowan, | ) | C/A No. 0:10-2100-RBH-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Michael McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

  Landrecus Cowan ("Cowan"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 16.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 18.) Cowan filed a response in opposition. (ECF No. 22.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted.

## BACKGROUND

  Cowan was indicted in Anderson County in September 2001 for murder (01-GS-04-2381), possession of a firearm or knife during the commission of a violent crime (01-GS-04-2382), and armed robbery (01-GS-04-2383). (ECF No. 17-26 at 1-6.) Cowan was represented by Robert A. Gamble, Esquire, and on October 15, 2002, was tried by a jury and found guilty of murder and possession of a firearm or knife during the commission of a violent crime. (App. at 408-9, ECF No. 17-8 at 52-53.) The circuit court sentenced Cowan to life imprisonment for murder and five years'

PJG

imprisonment for possession of a firearm, both sentences to be served concurrently. (App. at 414, ECF No.17-9 at 2.)

Cowan filed a direct appeal and was represented by Robert M. Dudek, Esquire, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, who filed a final brief raising the following issues:

> 1. Whether the trial judge erred by allowing the solicitor to cross-examine and challenge petitioner to name the real shooter, and name what witnesses saw the real shooter, since this cross-examination was burden-shifting and fundamentally unfair?
>
> 2. Did the trial judge err by ruling Officer Hill's testimony about [what] witnesses Brownlee and Stowers told him at the hospital at some time after the shooting was an excited utterance and not hearsay, since one witness was acting "normal," and the other was simply upset, since these statements did not qualify as excited utterances?

(ECF No. 17-12 at 4.) On March 18, 2005, the South Carolina Court of Appeals affirmed the decision of the lower court. (State v. Cowan, 2005-UP-197 (S.C. Ct. App. Mar. 18, 2005), App. at 416-22, ECF No. 17-9 at 4-10.) Cowan filed a petition for rehearing, which was denied. (ECF No. 17-14 & 17-15.) Cowan then filed a petition on November 23, 2005 with the South Carolina Supreme Court seeking certiorari review of the issues presented to the Court of Appeals. (ECF No. 17-16 at 4.) On January 18, 2007, the South Carolina Supreme Court issued a letter order denying Cowan's petition. (ECF No. 17-18.) The remittitur was issued on January 24, 2007. (ECF No. 17-19.)

Following the dismissal of his appeal, on February 13, 2007 Cowan filed a *pro se* application for post-conviction relief ("PCR"). (See Cowan v. State of South Carolina, 07-CP-04-416; App. at 423-35, ECF No. 17-9 at 11-23.) In his application, Cowan raised the grounds for relief that he was denied effective assistance of counsel and due process when his trial counsel failed to request jury instructions on self-defense and manslaughter. (App. at 431, ECF No. 17-9 at 19.) The State filed



a return.  (App. at 436-40, ECF No. 17-9 at 24-28.)  On April 22, 2008, Cowan, through counsel

Stephen Henry, Esquire, filed an amended PCR application alleging ineffective assistance of counsel

for the following reasons:

> a.  Trial counsel did not adequately prepare for trial.
>
> b.  Trial counsel was assigned to the case approximately one month prior to trial and did not have time to prepare for trial.
>
> c.  Trial counsel did not seek a continuance although more time was needed to prepare a defense.
>
> d.  Trial counsel did not submit a proposed jury instruction for the crime of manslaughter as an alternative to the murder charge.
>
> e.  Trial counsel did not submit a proposed jury instruction for self-defense.
>
> f.  Trial counsel failed to locate and call Michael Davis as a defense witness.
>
> g.  Trial counsel did not prepare the defendant for his testimony.
>
> h.  Trial counsel failed to introduce evidence of the victim's prior history of violence.
>
> i.  Trial counsel failed to adequately present the criminal history and evidence of benefit for testifying against the defendant of a key witness (Stanley Brownlee).
>
> j.  Trial counsel failed to properly interview and prepare key defense witnesses.
>
> k.  Trial counsel failed to fully discuss with defendant the impact of his taking the witness stand, including the advantage of final argument to the jury.
>
> l.  Trial counsel failed to object to the prosecutor's improper questions, including misstatement of testimony, the introduction of bad character evidence in her questions and other inadmissible evidence.

(ECF No. 17-21 at 2.)  On October 23, 2008, the PCR court held an evidentiary hearing at which

Cowan appeared and testified and continued to be represented by Stephen Henry, Esquire.  (App.

at 441-539, ECF No. 17-9 at 29 through ECF No. 17-11 at 43.)  At the beginning of the hearing,

counsel for Cowan withdrew specification "f" as quoted above.  (App. at 444-45, ECF No. 17-9 at

32-33.)  On November 30, 2008, PCR counsel filed an "Applicant's Brief in Support of Post Conviction Relief." (App. at 547-60, ECF No. 17-11 at 51-64.) By order dated March 12, 2009, the PCR judge denied and dismissed with prejudice Cowan's PCR application.  (App. at 561-76, ECF No. 17-11 at 65-80.)

On appeal, Cowan was represented by Robert M. Pachak, Esquire, Assistant Appellate Defender of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a who filed a Johnson[1] petition for a writ of certiorari that presented the following issue: "Whether trial counsel failed to provide an adversarial challenge to the State's case?" (ECF No. 17-22 at 3.)  Cowan filed a *pro se* response to the Johnson petition in which he alleged:

1.  Trial counsel failed to present a competent alibi defense and undermined applicant['] s chance for a manslaughter verdict.

2. Trial counsel failed to request a jury charge on manslaughter.

3. Trial counsel did not challenge a hearsay statement purportedly made [to] Lt. Hill by Andrew Watson.

4.  Trial counsel did not object to a prior statement by defense witness Andrew Watson that he (Watson) thought the applicant would commit murder.

5. Failure to object to Solicitor's improper closing arguments.

6. Failure to object to leading questions by the prosecutor.

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals).  Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  Anders, 386 U.S. at 744.



(ECF No. 17-23.)  The South Carolina Supreme Court denied Cowan's petition.[2]  (See Letter from

Clerk of Court, ECF No. 17-24.)  The remittitur was issued on July 13, 2010.  (ECF No. 17-25.)

## FEDERAL HABEAS ISSUES

In Cowan's federal petition for a writ of habeas corpus, he raises the following issues:

**Ground One:**  Excited utterance
> **Supporting Facts:**  Officer Hill testified that Brownlee was acting normal at the hospital.  There was not any basis for admitting his testimony as an excited utterance.  Further, Hill's testimony that Stowers was "upset" also did not qualify for his statement at the hospital to be admitted as an excited utterance.

**Ground Two:**  Burden Shifting
> **Supporting Facts:**  On cross Solicitor ask[ed] appellant who the real shooter was and she asked who saw the real shooter.  The State have the burden of proving appellant's guilt.  Appellant's not obligated to prove anything.  Even that a third party killed the decedent.  The solicitor shifted the burden of proof.

**Ground Three:**  Ineffective Assistance of Counsel
> **Supporting Facts:**  (1) Counsel failed to present a competent alibi defense and undermined applicant's chance for a manslaughter verdict; (2) counsel failed to request a jury charge on manslaughter; (3) counsel did not challenge hearsay statement made to Lt. Hill by Watson; (4) counsel did not object to prior statement by Watson that he thought applicant would commit murder; (5) failure to object to closing arguments; (6) failure to object to leading questions; [and] (7) counsel no prepared for trial.

(Pet., ECF No. 1) (errors in original).

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine

dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."

---

[2] The court notes that the record does not contain a copy of this order, but a June 25, 2010 cover letter from the Clerk of Court for the South Carolina Supreme Court indicated that such an order was enclosed.



Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

PJG

**B.     Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Id. at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to

§ 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").  To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks & citation omitted).  Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v.



Thompson, 501 U.S. 722 (1991).  For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.

**D.    Respondent's Motion for Summary Judgment**

**1.    Ground One**

In Ground One, Cowan appears to argue that the trial court erred in admitting the testimony of Officer Hill concerning statements made to him by witnesses Stanley Brownlee and Larry Stowers as excited utterances, rather than excluding them as hearsay.  The South Carolina Court of Appeals rejected this argument pursuant to the South Carolina Rules of Evidence and South Carolina state law.  Accordingly, this determination by the Court of Appeals ultimately involved a question of state evidentiary law.  "It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Furthermore, "in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' "  Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket v. Angelone, 208 F.3d 172, 186 (4th Cir.2000)). In this case, Cowan argues only that the state trial court and appellate court misapplied state law; he has not raised this allegation, either in state court or in his Petition, as one asserting a constitutional error.  Accordingly, federal habeas relief is not available for this ground.  Moreover, even if Cowan were attempting to raise an alleged constitutional error, upon review of the record and the evidence against Cowan, Cowan cannot satisfy the standard in Barbe.  Therefore, Cowan is not entitled to habeas relief on this ground.



2.    **Ground Two**

In Ground Two, Cowan argues that the trial court erred in allowing the State to impermissibly shift the burden of proof.  Specifically, Cowan argues the trial court allowed the State to ask improper questions, including asking him where is the person that saw the "real shooter" and to name the real shooter.

As additional background, this case results from a shooting incident over a craps table at a "gambling trailer."[3]  At trial, the State produced witnesses testifying that Cowan committed the murder.  Contrarily, Cowan testified that he was at the trailer, but stated that he was outside of it when the shooting occurred.  The testimony at issue then occurred as follows:

SOLICITOR:  So, you're going to go with the alibi defense?  Now, you knew who was playing at the craps table because you were in and out; isn't that right?

COWAN: Yes, ma'am.

SOLICITOR:  Where is the person that was at that craps table that saw the real shooter?  You have subpoena power, don't you?

COWAN:  I don't know.

SOLICITOR:  Well, there were a bunch of people in the trailer, weren't there?

COWAN: Yes, ma'am.

SOLICITOR:  And you know them.  You hang out there. Your friends, your family hang out there, don't they?

    COWAN'S ATTORNEY:  I object to this line of questioning, your honor.

    COURT:  What's your objection?  What's your legal objection?

    COWAN'S ATTORNEY:  It's a burden-shifting type of question.

---

[3] The South Carolina Court of Appeals described the "gambling trailer" as "a modified mobile home where people gather to play cards, drink alcohol, and socialize."  (App. at 417, ECF No. 17-9 at 5.)



COURT:  I overrule at this time.
Go ahead, Solicitor.  Do you want to rephrase your question?

SOLICITOR:  So, who's the real shooter, Mr. Cowan?

COWAN:  To me, Darius Thomas was the real shooter.

SOLICITOR:  Oh, he's the real shooter?

COWAN:  That's what I believe.

SOLICITOR:  I see.  But it's not you?

COWAN:  No ma'am, it wasn't me.

SOLICITOR: And who from inside that trailer saw that. You were in and out. Who have you talked to that saw the real shooter?

COWAN: I wasn't there, ma'am.

(App. at 326-27, ECF No. 17-7 at 16-17.)

The South Carolina Court of Appeals rejected Cowan's argument that this line of questioning allowed the State to improperly shift the burden of proof.  The state appellate court recognized that the State had the burden to establish each element of each offense by proof beyond a reasonable doubt.  However, the appellate court observed that "[w]hile being cross-examined, Cowan admitted he knew the people who were playing craps with the victim."  (App. at 421, ECF No. 17-9 at 9; App. at 326, ECF No. 17-7 at 16.)  The court further noted that Cowan produced other witnesses on his behalf.  Therefore, the South Carolina Court of Appeals concluded that

> it was not improper for the solicitor to comment on Cowan's failure to produce the individuals who were playing craps with the victim and whose testimony would substantiate Cowan's story if it were true.  Additionally, the trial judge's jury charge explained that the State had the burden of proving Cowan's guilt, thereby mitigating any possible confusion caused by the solicitor's cross-examination.

(App. at 422, ECF No. 17-9 at 10.)

As observed by the South Carolina Court of Appeals, the prosecution is required to prove beyond a reasonable doubt every element of the charged crime.  In re Winship, 397 U.S. 358, 364 (1970).  Moreover, to be entitled to habeas relief based on improper comments or remarks by a prosecutor, they must "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  In this case, Cowan has failed to demonstrate that the solicitor's questions impermissibly shifted the burden of proof to him.  The solicitor cross-examined Cowan concerning his testimony that he was at the craps table during that night and was outside of the trailer during the shooting.  The court also observed that one of the defendant's witnesses had testified that Cowan exited the trailer saying "don't go inside, they're shooting in there."  (App. at 252, ECF No. 17-5 at 12.)  There is no indication that the solicitor's line of questioning suggested that the defendant had the burden of proof or obligation to produce certain evidence; rather, the solicitor's questions demonstrate that she was exploring and examining Cowan's testimony and his defense.  As such, Cowan has failed to demonstrate these questions were improper.  See, e.g., United States v. Diaz, 190 F.3d 1247, 1255 (11th Cir. 1999) (holding that the prosecutor asking "Where else would $12,000 come from?" in closing argument did not impermissibly shift the burden where the defendant testified as to sources of his income, as the comment was a logical inference from the evidence at trial); United States v. Parker, 903 F.2d 91, 98 (2d Cir. 1990) (stating that a while a prosecutor may not comment "in a way that trenches on the defendant's constitutional rights and privileges," she "is entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case, . . . as well as his failure to support his own factual theories with witnesses") (internal quotation marks and citation omitted); United States v. Brown, 70 Fed. Appx. 99, 105 (4th Cir. 2003) (holding that statements by the prosecution pointing out the



defense team's failure to impeach certain witnesses with grand jury testimony and inviting the jury to conclude that the witnesses were reliable did not improperly shift the burden of proof to the defendant). Additionally, the questions asked by the solicitor were found to be proper under South Carolina law. (See App. at 421-22, ECF No.17-9 at 9-10) (citing Douglas v. State, 504 S.E.2d 307 (S.C. 1998), State v. Bamberg, 240 S.E.2d 639 (S.C. 1977), and State v. Shackelford, 88 S.E.2d 778 (S.C. 1955)).

After careful review of the record and consideration of the surrounding circumstances and the strength of the State's case, the court finds Cowan has failed to show that the state appellate court unreasonably misapplied clearly established federal law in finding that the solicitor's questions did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. Further, Cowan has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d), (e)(1). Thus, Cowan is not entitled to habeas relief on this Ground.

### 3.    Ground Three

In Cowan's Petition, he raises seven allegations of ineffective assistance of trial counsel. As stated above, these allegations include the following:

> (1) Counsel failed to present a competent alibi defense and undermined applicant's chance for a manslaughter verdict; (2) counsel failed to request a jury charge on manslaughter; (3) counsel did not challenge hearsay statement made to Lt. Hill by Watson; (4) counsel did not object to prior statement by Watson that he thought applicant would commit murder; (5) failure to object to closing arguments; (6) failure to object to leading questions; [and] (7) counsel no[t] prepared for trial.

(Pet., ECF No. 1 at 8.)

### a.    Procedural Bar

The respondent argues that Cowan's seventh allegation of error is procedurally barred, as it was not properly preserved *and* presented in Cowan's PCR appeal.  Upon review of the record, the court finds that this issue was arguably raised to and ruled upon by the PCR court as well as in Cowan's <u>Johnson</u> petition.  Accordingly, the court will address the merits of this issue below.

### b.    Merits

A defendant has a constitutional right to the effective assistance of counsel.  To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  <u>Id.</u> at 687; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of <u>Strickland</u>, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.  With regard to the second prong of <u>Strickland</u>, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).



The United States Supreme Court has recently cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)."  Harrington, 131 S. Ct. 770, 788 (2010).  The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Id. (quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)).  The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court).  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

i.     **Counsel's Presentation of an Alibi Defense and Trial Preparation**

In his Petition, Cowan first alleges that his counsel was ineffective based on Cowan's assertions that "Counsel failed to present a competent alibi defense and undermined applicant's chance for a manslaughter verdict." (Pet., ECF No. 1 at 8.)  Similarly, Cowan's seventh allegation of error alleges that trial counsel was not adequately prepared for trial.  (Id.)  Cowan's allegations appear to rest on his arguments that counsel presented witnesses that had previously provided statements to the police that did not support an alibi defense, that counsel failed to interview these witnesses, and that counsel failed to ascertain these witnesses' prior criminal histories.  In support of these claims, Cowan appears to rely on alleged inconsistencies between the testimony of defense witnesses Irby, McDowell, and Palmer and their police statements.  Cowan argues that a review of these witnesses' police statements does not support his alibi defense and counsel therefore erred in calling them as witnesses.

In rejecting these claims, the PCR court found as follows:

> This Court finds that the Applicant's allegation that Counsel failed to prepare defense witnesses and investigate witnesses' criminal backgrounds is without merit. At the PCR evidentiary hearing, Counsel testified that he was aware that the defense witnesses had credibility problems. Nevertheless, Counsel testified that he called the witnesses to testify because they were the only witnesses willing to support the Applicant's alibi defense. Counsel further testified that it is his normal practice to prepare all witnesses for their trial testimony; however, Counsel testified that despite preparation, it's impossible to predict a [witness's] testimony. This Court finds that Counsel's testimony that it is his normal practice to prepare defense witnesses for their trial testimony is credible. Counsel also testified that his normal practice is [to] review and know witness statements given to police. This Court finds that Counsel acted reasonably within professional norms in handling witnesses despite the witnesses' credibility problems and police statements.

(App. at 567, ECF No. 17-11 at 71.)  The PCR court also observed, in rejecting Cowan's allegation that counsel failed to adequately prepare for trial, that "Counsel testified that he met with Applicant, investigated the facts of the case, and contacted several witnesses to testify on Applicant's behalf"



and that such testimony was credible.  (App. at 566, ECF No. 17-11 at 70.)  Further, the PCR court found that "the Applicant failed to show that any other evidence could have been produced or that any other points could have been raised had there been more time to prepare for trial."  (Id.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds that Cowan cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting these claims or that the PCR court made objectively unreasonable factual findings.  See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).  Counsel testified that he and the investigator met with Cowan and that Cowan had maintained his innocence and claimed that he was not in the trailer at the time of the shooting. Counsel stated that he reviewed the discovery responses with Cowan and had spoken to several witnesses, which included Watson and McDowell.  Counsel also testified that the investigator interviewed several witnesses that counsel believed would support Cowan's alibi defense prior to their testimony.  Counsel conceded that he knew these witnesses had credibility issues and intimated that anyone at the trailer would have similar issues.  He also conceded, after these witnesses testified, that they were horrible witnesses.

As stated above, the PCR court found counsel's testimony to be credible, and Cowan has not clearly shown that the PCR court's credibility determinations were without support.  See Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) ("But for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear.").  Cowan argues that the witnesses should not have been considered as alibi witnesses because the police statements from those witnesses did not support such a defense and because of the witnesses' prior criminal records. Cowan also appears to argue that counsel was not adequately prepared for trial because he only met

with Cowan twice beforehand. Upon review of the record and the parties' arguments, the court finds

that Cowan has failed to demonstrate that the PCR court unreasonably misapplied clearly established

federal law in determining that counsel was not ineffective in the presentation of an alibi defense and

in his trial preparation.

### ii.      Jury Charge on Manslaughter

Cowan next argues that counsel was ineffective in failing to request a jury charge on

manslaughter. The PCR court rejected this claim, finding the following:

> For a defendant to be entitled to a jury instruction on a lesser-included
> offense, there must be some evidence in the record that would tend to show that the
> defendant is guilty of the lesser rather than the greater offense. State v. Fields, 356
> S.C. 517, 589 S.E.2d 792 (Ct. App. 2003); State v. Funchess, 267 S.C. 427, 229
> S.E.2d 331 (1976). The possibility that the jury might believe some of the State's
> case and not the rest is an insufficient argument for a lesser-included offense
> instruction. Funchess, 267 S.C. at 430, 229 S.E.2d at 332. Where defendant's
> defense is that he did not participate in the crimes at all, a lesser-included offense
> instruction would not be warranted. See Moultrie v. State, 354 S.C. 646, 583 S.E.2d
> 436 (2003) (where defendant's defense was that he never assaulted the victim at all,
> a lesser-included offense charge was not warranted).
>
> This Court finds no evidence in the record that would support a lesser-
> included offense charge of voluntary manslaughter. The Applicant's defense was
> that he did not participate in the shootings at all. He claimed at trial that he never
> fired any shots nor was he involved in the incident in any way. In such
> circumstances, a lesser-included offense instruction would not be warranted. See
> Moultrie, 354 S.C. 646, 583 S.E.2d 436 (where defendant's defense was that he never
> assaulted the victim at all, a lesser-included offense charge was not warranted). This
> Court finds that Counsel was not ineffective for failing to request a jury charge on
> manslaughter.
>
> This Court finds that the Applicant's allegation that Counsel was ineffective
> for not presenting a self-defense or manslaughter trial strategy is without merit.
> Counsel testified that he discussed self-defense and manslaughter strategies with the
> Applicant. However, Counsel testified that during pre-trial discussions the Applicant
> was adamant that he was completely innocent. Counsel further testified that the
> Applicant told him that he was not in the building when the murder occurred and did
> not participate in the events leading to the shooting. In addition, at trial the Applicant
> testified under oath that he did not shoot the victim, and that when the gunshots were
> fired inside the trailer, he was standing on the outside of the building drinking beer.



(Tr. p. 309, line 24; Tr. p. 310, lines 1-6). Counsel testified that it was a trial strategy to not present conflicting defenses because the Applicant maintained complete innocence to the charges of armed robbery and murder. Counsel testified at the PCR hearing that he believed that arguing to the jury that it should find the lesser included offense would diminish and undermine his argument that Applicant was not the shooter. That was the focal point of his case, and he was concerned that any argument about finding Applicant guilty of a lesser-included offense would have been interpreted as an admission that the attorney knew his client was guilty of some crime. Thus, this Court finds that Counsel presented valid reasons at the evidentiary hearing to not present trial strategies of manslaughter and self-defense where Applicant insisted upon a trial strategy of complete innocence. Moultrie, 354 S.C. 646, 583 S.E.2d 436; Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1995).

(Tr. at 568-69, ECF No. 17-11 at 72-73.)

Cowan argues that there was evidence to support a manslaughter charge and that he had asked counsel to request a manslaughter charge before and after the trial. As stated above, the PCR court found counsel's testimony credible and Cowan has not clearly shown that the PCR court's credibility determinations were without support. See Cagle, 520 F.3d at 324. Further, the court finds that Cowan has failed to demonstrate that the PCR court unreasonably misapplied clearly established federal law in determining that counsel was not ineffective for not pursuing a voluntary manslaughter defense or for not pursuing the lesser-included offense after the alibi witnesses had testified because this was inconsistent with Cowan's version of what occurred, to which he ultimately testified. See Strickland, 466 U.S. at 691; see also Mobley v. Head, 267 F.3d 1312, 1318-19 (11th Cir. 2001) ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . . counsel's failure to pursue those investigations may not later be challenged as unreasonable.") (quoting Strickland, 466 U.S. at 691). The court finds that Cowan has failed to demonstrate that his counsel's performance was deficient. See Yarborough v. Gentry, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"); McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating

trial counsel's performance, [courts] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."). Accordingly, Cowan has failed to demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the United States Supreme Court in rejecting this claim. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d).

### iii.    Statement Made to Lt. Hill by Watson

Cowan next argues that counsel was ineffective in failing to object to an alleged hearsay statement made to Lt. Hill by Andrew Watson. Specifically, Lt. Hill testified that in a discussion he held with Watson shortly after the shooting, Watson identified Cowan as the shooter. Counsel testified that he did not object to this statement because it was admissible as an excited utterance. The PCR court reviewed the requirements for a statement to qualify as an excited utterance and, applying these factors to this statement, the PCR court found that Watson's statement to Lt. Hill was an excited utterance. The PCR court observed that

> Officer Hill was the first law enforcement officer to respond to the scene. Hill testified that he arrived at the crime scene three minutes after the crime was reported. (Tr. p. 19, lines 9-10). Hill testified that within three to five minutes of his arrival, Watson made the statement to him about the shooting. Watson testified that after he heard the gunshots, "there was a lot of screaming and running. As a matter of fact I got stampeded." (Tr. p. 252, lines 12-17).

(App. at 570, ECF No. 17-11 at 74.) Accordingly, the PCR court found that this statement was admissible as an excited utterance. The PCR found it was also admissible as an exception to the hearsay rule because it was not offered to prove the truth of the matter asserted, but rather was introduced for the "limited purpose of explaining why the police investigated [Cowan]." (Id.) Finally, the PCR court found that even if counsel were deficient, Cowan could not demonstrate

prejudice because this testimony was cumulative to testimony from other witnesses that Cowan was the shooter and there was overwhelming evidence of Cowan's guilt.

Cowan disputes the PCR court's determination that this statement qualified as an excited utterance. However, as stated above, "it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. Further, as observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. The court finds that Cowan has failed to demonstrate that the PCR court's determination that trial counsel was not deficient was an unreasonable application of the Strickland test.[4]

### iv.     Prior Statement by Watson

Cowan next contends that counsel was ineffective in failing to object to a prior statement by Andrew Watson indicating that Watson thought that Cowan could have committed the murder. Andrew Watson was called as a defense witness. During cross-examination, Watson denied telling Lt. Hill that Cowan committed the murder. (App. 255, ECF No. 17-5 at 15.)  Watson further testified that

> I think [Lt. Hill] even asked "Who did the shooting?"  I said, "Well I really don't know, but I heard some shots."  And he – I think he asked me something about [Cowan].  I said, "Well, he could have."

---

[4] Even if Cowan could demonstrate that counsel was deficient, he has not established prejudice. Cowan points out that the testimony was inconsistent with his alibi defense and that the solicitor referenced it in her closing argument. However, as stated by the PCR court, this testimony was cumulative to testimony from other witnesses that Cowan was the shooter and there was overwhelming evidence of Cowan's guilt.



(App. at 256, ECF No. 17-5 at 16.)  After several more questions, the following colloquy occurred,

to which Cowan alleges counsel should have objected:

SOLICITOR: Do you remember giving a statement on July 14th at 5:43 AM to the police that you signed?  Do you remember that?

WATSON: Yes, I got a copy of it.

SOLICITOR:  Okay. And if you'll just take a look at that a minute.  Do you remember saying, "I know that Dreek Cowan was there.  I don't know that he did it. But I feel like he would do it because he's always had an attitude."  Did you write that?

WATSON:  Well, what I said was, to the officer, I told him Dreek had an attitude that night.

      COURT: Mr, Watson, she asked you did you write that?  That was the question.  You can say, yes or no or I don't know.  Then you may explain it.  But answer her question.  Listen to her question and answer it.  Do you understand?

SOLICITOR:  Is that part of your statement?

WATSON:  I would say, yeah.

      COURT:  Now, you may explain it if you want to explain it.

      WATSON:  That's what I want to do, explain it.

      COURT: You're welcome to explain it, but answer the question first.

SOLICITOR: So your statement says, "I know that Dreek Cowan was there.  I don't know that he did it.  But I feel like he would do it because he always has an attitude.  After the shooting, he came outside and said that someone was shooting inside.  He looked like he was trying to hide something under his shirt.  He had on a red jersey like shirt and blue jeans."
      Do you remember writing that in your statement?

WATSON:  Yes ma'am, I said that.  But I also said Dreek had an attitude that night.  I didn't say he always have an attitude.

SOLICITOR:  What did you mean by he had an attitude that night?

WATSON:  Because that same night this guy was back there running the dice game.  He came and said, "Look, you're going to have to handle your own game."  I said, "Why is that?"  He said, "Because this guy here got an attitude."  And so I said, "Okay."

SOLICITOR:  And who had the attitude? Which guy?

WATSON:  He was saying Dreek had an attitude.

SOLICITOR:  So, he left because he had an attitude, this other guy did?

WATSON:  Yeah.

(App. 257-59, ECF No. 17-5 at 17-19.)

The PCR court considered this argument and found that "[t]he prior statement by Watson was not objectionable because the statement is an exception to character evidence under Rule 404(a)(1) of the South Carolina Rules of Evidence."  (App. at 573, ECF No. 17-11 at 77.)  Specifically, the PCR court found that Watson's testimony concerning Cowan's attitude was admissible to rebut statements that Watson made during direct examination showing that Cowan "had a good disposition for peacefulness and heroism."  (App. at 574, ECF No. 17-11 at 78.)  Alternatively the PCR court found that even if the statement were not admissible as substantive evidence, Watson's prior statement could have been used as impeachment evidence under Rule 613 of the South Carolina Rules of Evidence.  Finally, the PCR court found that even if counsel were deficient in failing to object to this testimony, Cowan failed to demonstrate that he was prejudiced by counsel's failure in light of the overwhelming evidence against him.

Cowan argues that counsel should have objected because the evidence was clearly inadmissible.  As with Cowan's previous arguments based on state law, "it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68.  Further, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785.  The court finds that

Cowan has failed to demonstrate that the PCR court's determination that trial counsel was not deficient was an unreasonable application of the <u>Strickland</u> test.[5]

### v.    Closing Arguments

Cowan argues that counsel was ineffective in failing to object to the solicitor's closing argument. Specifically, Cowan alleges that the following statements by the solicitor were improper:

> This isn't a popularity contest, because you're here to set standards for this community. It's not a contest. You're here to judge that defendant's behavior. Because he's the one that took out a gun and killed someone for money in a crowded room. And that behavior cannot be tolerated no matter which race it's against, no matter which socioeconomic group it's against, and no matter which neighborhood it's in.

(App. at 384, ECF No. 17-8 at 28.)

The PCR court in reviewing this claim found that the solicitor's comments did not "so infect the proceeding with unfairness as to deny [Cowan] due process." (App. at 571-72, ECF No. 17-11 at 75-76) (citing <u>State v. Hamilton</u>, 543 S.E.2d 586, 596 (S.C. 2001)). The PCR court found that

> [t]he Solicitor's remarks about the community did not impermissibly appeal to the passions and prejudices of the jury. This Court finds that the Solicitor's comments did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." 344 S.C. at 362, 543 S.E.2d at 596. The Solicitor's arguments were permissible, and her references to evidence were proper and reasonable inferences made based on the evidence in the record.

(App. at 572, ECF No. 17-11 at 76.) Moreover, the PCR court found that "viewing the case as a whole, even if it were determined that the closing arguments were improper and trial counsel should have objected, trial counsel's inaction does not rise to the level of prejudice to establish ineffective assistance of counsel requiring a granting of post-conviction relief and a new trial." (<u>Id.</u>)

---

[5] Even if Cowan could demonstrate that counsel were deficient, the PCR court's finding that Cowan had not established prejudice in light of the overwhelming evidence of Cowan's guilt would not warrant relief under the § 2254(d) standard.



When examining claims pertaining to improper comments by a prosecutor, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). However, the Darden Court noted that "it is not enough that the remarks were undesirable or even universally condemned." Id. (internal quotation omitted). Having reviewed the record and considered the weight of the evidence and the extent of these comments, the court finds that the PCR court's finding that the prosecutor's comments did not render Cowan's trial fundamentally unfair are not inconsistent with § 2254(d). Moreover, Cowan has failed to establish that there is a reasonable probability that the result of the proceeding would have been different if trial counsel had objected to these comments. Strickland, 466 U.S. at 694. Therefore, Cowan has failed to establish that trial counsel was constitutionally ineffective in failing to object during closing arguments. Furthermore, Cowan has not shown that the PCR court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410.

### vi.    Failure to Object to Leading Questions

Finally, Cowan argues that counsel was ineffective in failing to object to leading questions by the solicitor. In particular, Cowan appears to argue that counsel should have objected to questions that the solicitor asked during her examination of prosecution witness Stanley Brownlee. Cowan argued to the PCR court that

> Stanley Brownlee testified that he heard the first shot as he was walking out the door. (Tr. p 63, lines 7-9) Brownlee then said he heard two more shots. (Tr. p 63, lines 20-21) After it was clear that Brownlee had HEARD but not SEEN the shots fired, the



prosecutor, not satisfied with those answers and eager to create an eyewitness to the shooting asked Brownlee the following question, "how did the defendant act when he shot [the victim]?"  (Tr. p 64, line 6)

(Cowan's Br. Supp. PCR, App. 558, ECF No. 17-11 at 62) (emphasis in original).

The PCR court rejected this argument.  First, the PCR court "[did] not find any instances of leading questions of a sufficiently prejudicial nature to support a grant of relief."  (App. at 573, ECF No. 17-11 at 77.)  Further, the PCR court found that even if counsel were deficient in failing to object to any leading questions, "none of the instances individually or taken in aggregation resulted in the requisite prejudice to the Applicant.  There is *no* reasonable probability that the result of the trial would have been different but for trial counsel's failure to object to any of the allegedly leading questions."  (Id.) (emphasis in original).

In support of this claim, Cowan reasserts the argument he presented to the PCR court.  The respondent argues that Cowan has taken Brownlee's testimony out of context.  Specifically, the respondent points out that Brownlee previously testified that he saw Cowan with a gun at the craps table.  (App. at 62, ECF No. 17-1 at 70.)  Brownlee also stated that he saw Cowan approach the victim with the gun and it scared him.  Brownlee testified that he was walking towards the door and he heard the first shot when he "got out."  (App. at 63, ECF No. 17-1 at 71.)  Brownlee continued to state that when he looked back, the victim fell.  When asked, "who was shooting when you saw [the victim] fall," Brownlee stated that Cowan had the gun.  (Id.)

Upon review of the record and the parties' arguments, the court finds that Cowan has failed to demonstrate that the PCR court's findings meet the § 2254(d) standard to obtain habeas relief.  The questions Cowan relies upon do not appear to be leading; however, even if they were, Cowan cannot demonstrate prejudice.  Later in Brownlee's testimony, he identified Cowan as the person who shot and killed the victim, stating that he did not have any doubt that Cowan committed this

crime.  (App. 68-69, ECF No. 17-2 at 6-7.)  Accordingly, Cowan has failed to demonstrate that the PCR court unreasonably misapplied the two-prong test enunciated in Strickland in rejecting this claim or that the PCR court made objectively unreasonable factual findings.  See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).

           **c.**      **Conclusion**

Based upon all of the foregoing reasons, Cowan has failed to demonstrate that the PCR court unreasonably misapplied the Strickland test or any other clearly established federal law or that the PCR court made objectively unreasonable factual findings in concluding that Cowan failed to demonstrate that his trial counsel was ineffective.  See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).  Accordingly, Cowan is not entitled to habeas relief on any of these allegations of error.

                      **RECOMMENDATION**

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 16) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 22, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).